No. 15-1308

IN THE

# United States Court of Appeals for the Federal Circuit

LET'S GO AERO, INC.,

*Plaintiff-Appellee,*

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,

*Defendant-Appellant,*

On Appeal from the United States District Court for the
District of Colorado in Case No. 1:14-cv-01600-RM-MEH
Judge Raymond P. Moore

## APPELLANT'S BRIEF

David B. Cupar
Matthew J. Cavanagh
MCDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Defendant-Appellant*
*Cequent Performance Products, Inc.*

## <u>CERTIFICATE OF INTEREST</u>

In accordance with Federal Circuit Rule 47.4, counsel for appellant Cequent Performance Products, Inc. certifies the following:

1.      The full name of every party or amicus represented by me: Cequent Performance Products, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me: None.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me: TriMas Corporation, which is a publicly traded corporation (Nasdaq: TRS), is Cequent's parent.

4.      The names of all law firms and the partners or associates that have appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: David B. Cupar and Matthew J. Cavanagh, of McDonald Hopkins LLC, appeared below and will appear in this Court.

Dated:  July 1, 2015                     s/ David B. Cupar
                                      David B. Cupar
                                      *Counsel for*
                                      *Cequent Performance Products, Inc.*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT OF RELATED CASES ..................................................... vii

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF ISSUES ........................................................................ 3

STATEMENT OF THE CASE ................................................................... 8

I.      Prior License ..................................................................................... 8

II.     First Lawsuit and Settlement with Arbitration Clause ................ 10

III.    Second Lawsuit .............................................................................. 12

        A.      LGA's Claims ...................................................................... 12

        B.      Cequent Moves to Compel Arbitration ............................. 14

        C.      The Colorado Court Denies, In Part, Cequent's Motion ...... 15

SUMMARY OF ARGUMENT ................................................................ 18

ARGUMENT .......................................................................................... 21

I.      The District Court Erred by Deciding Certain LGA Claims
        Were Not Arbitrable ....................................................................... 21

        A.      Standard of Review ............................................................. 21

        B.      Law for Interpreting and Applying Arbitration Clauses ..... 22

        C.      The Arbitration Clause Is Broad ........................................ 23

D.   The Breadth of the Clause Strengthens the Already Strong Presumption of Arbitrability .....................................24

E.   The District Court's Arbitrability Analysis Was Erroneous ...............................................................................25

F.   All of LGA's Claims Are Arbitrable.....................................29

    1.   Claim Four -- Intentional Interference.........................31

    2.   Claim Five -- Direct Patent Infringement ...................33

    3.   Claim Seven -- Trademark Infringement ....................34

    4.   Claim Eight -- False Advertising .................................35

    5.   Claim Nine -- Copyright Infringement ........................35

    6.   Claim Eleven -- Unfair Competition ............................36

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .................38

CERTIFICATE OF SERVICE...................................................39

CERTIFICATE OF COMPLIANCE .......................................40

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Atmel Corp. v. Vitesse Semiconductor Corp.*,
   30 P.3d 789 (Colo. Ct. App. 2001) ........................................................ 27

*AT & T v. Technologies, Inc. v. Communications Workers of Am.*,
   475 U.S. 643 (1986) ................................................................. 18, 25, 29

*Beeghly v. Mack*,
   20 P.3d 610 (Colo. 2001) ........................................................................ 28

*Brown v. Coleman Co.*,
   220 F.3d 1180 (10th Cir. 2000) ............................................................. 23

*Burlington Northern & Santa Fe Ry. Co. v. PSO.*,
   636 F.3d 562 (10th Cir. 2010.) ........................................................ 25, 29

*Bushman Inv. Properties, Ltd. v. DBSI E-470 East LLC*,
   No. 09-00674, 2010 WL 582351 (D. Colo. Feb. 16, 2010).................... 15

*Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*,
   567 F.3d 1191 (10th Cir. 2009) ............................................................. 31

*City and County of Denver*,
   939 P.2d 1353 (Colo. 1997) (en banc)................................................... 23

*Cummings v. FedEx Ground Package Sys., Inc.*,
   404 F.3d 1258 (10th Cir. 2005) ....................................................... 23, 24

*Flex-Foot Inc. v. CRP, Inc.*,
   238 F.3d 1362 (Fed. Cir. 2001)............................................................. 21

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) ................................................................................. 22

*Kaiser v. Bowlen,*
  455 F.3d 1197 (10th Cir. 2006) ............................................27

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,*
  174 F.3d 907 (7th Cir. 1999) .......................................23, 24

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
  708 F.2d 1458 (9th Cir. 1983) ............................................24

*Microchip Technology Inc. v. U.S. Philips Corp.,*
  367 F.3d 1350 (Fed. Cir. 2004)......................................2, 21

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ...............................................................22

*Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.,*
  615 F.3d 1268 (10th Cir. 2010) ...............................22, 23, 24

*P & P Indus, Inc. v. Sutter Corp.,*
  179 F.3d 861 (10th Cir. 1999) ............................................24

*Promega Corp. v. Life Technologies Corp.,*
  674 F.3d 1352 (Fed. Cir. 2012)...........................................23

*Sanchez v. Nitro-Lift Technologies, L.L.C.,*
  762 F.3d 1139 (10th Cir. 2014) ..........................................21

*United Steelworkers of Am. v . Warrior & Gulf Navigation Co.,*
  363 U.S. 574 (1960) ...........................................................22

## Constitution and Statutes

U.S. Const. art. III ...................................................................1

9 U.S.C. § 3 ...............................................................1, 14, 22

9 U.S.C. § 4 ...................................................................1, 22

9 U.S.C. § 16 ....................................................................................... 16

9 U.S.C. § 16(a)(1)(A) .................................................................... 1, 2

9 U.S.C. § 16(a)(1)(B) .................................................................... 1, 2

28 U.S.C. § 1292(c)(1) ........................................................................ 2

28 U.S.C. § 1331 .................................................................................. 1

28 U.S.C. § 1338(a) ............................................................................. 1

28 U.S.C. § 1367(a) ............................................................................. 1

**Other Authority**

Restatement (Second) of Contracts § 203(a) (1979) ................................ 27

# STATEMENT OF RELATED CASES

No other appeal involving this civil action is or was before this or any other appellate court.

There is one pending action that likely will be directly affected by this Court's decision. When Let's Go Aero, Inc. ("LGA") lodged a venue objection to Cequent moving the Colorado court to compel arbitration in Chicago, Illinois, Cequent filed a petition to compel arbitration in the United States District Court for the Northern District of Illinois. That case is entitled *Cequent Performance Products, Inc. v. Let's Go Aero, Inc.*, Case No. 1:14-cv-08457, is before Judge Charles P. Kocoras, and has been stayed pending a decision by this Court.

Counsel for Cequent knows of no other pending cases that would be directly affected by this Court's decision.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this action under 28 U.S.C. § 1331 and § 1338(a) because the civil action arose under the Patent Act. The district court had jurisdiction over the state law claims under 28 U.S.C. § 1367(a) as those claims are so related to the claims under the Patent Act that they form part of the same case or controversy under Article III of the United States Constitution.

On January 28, 2015, the district court below granted, in part, and denied, in part, Cequent's motion to compel arbitration. Cequent's motion had sought an order compelling arbitration under 9 U.S.C. § 4 and, alternatively, a stay of the case pending arbitration under 9 U.S.C. § 3. The district court ruled that six of the twelve claims in LGA's second amended complaint were not arbitrable, and denied Cequent's motion, in part, on that basis. Cequent timely filed its notice of appeal within thirty days of that order, on February 3, 2015.

This Court has subject matter jurisdiction over this appeal because the order appealed from is immediately appealable under 9 U.S.C. § 16(a)(1)(A), (a)(1)(B), or both. That is because the district court denied Cequent's motion to compel arbitration as to certain claims,

which is an order that is immediately appealable under § 16(a)(1)(A), and it denied Cequent's request for a stay of those claims based on their arbitrability, which is an order that is immediately appealable under § 16(a)(1)(B).

This Court has exclusive subject matter jurisdiction over this appeal, rather than the regional circuit, under 28 U.S.C. § 1292(c)(1) because the district court's order is immediately appealable and the civil action below arose under the Patent Act. *See Microchip Technology Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1355 (Fed. Cir. 2004).

# STATEMENT OF ISSUES

A 2012 settlement agreement between LGA and Cequent settled pending litigation between them over rights to certain vehicle cargo products, and it terminated a prior license to IP rights between the parties that covered those products. The settlement agreement included a broad arbitration clause, requiring the parties to arbitrate any future dispute "arising from or relating to" their settlement agreement. The district court decided that six of LGA's 12 claims are arbitrable.

1.    Did the district court err by ruling that LGA's Claim Four (intentional interference) was not subject to the arbitration clause when: (i) the breadth of the arbitration clause triggers a heavy presumption in favor of arbitrability, which LGA had not overcome; (ii) LGA's interference claim challenges Cequent's sales of the same cargo products and patents at issue in the prior litigation, which was resolved by the parties' settlement agreement; (iii) the claim requires a determination of whether Cequent's sales are those permitted under the settlement agreement; (iv) LGA premised the claim on the settlement agreement's termination of the parties' license agreement; and (v) the

district court ruled that six other LGA claims based on the same alleged conduct were arbitrable?

2.   Did the district court err by ruling that Claim Five (patent infringement) was not arbitrable when: (i) the breadth of the arbitration clause triggers a heavy presumption in favor of arbitrability, which LGA had not overcome; (ii) LGA's infringement claim challenges Cequent's sale of the same cargo products with the same patents as in the prior litigation, which was resolved by the parties' settlement agreement; (iii) the claim requires a determination of whether Cequent's sales are those permitted under the settlement agreement; (iv) LGA premised the infringement claim on the settlement agreement's termination of the parties' license agreement; and (v) the district court ruled that six other LGA claims based on the same alleged conduct (including a claim for induced infringement) were arbitrable?

3.   Did the district court err by ruling that Claim Seven (trademark infringement) was not arbitrable when: (i) the breadth of the arbitration clause triggers a heavy presumption in favor of arbitrability, which LGA had not overcome; (ii) LGA's claim challenges Cequent's marketing and sale of the same cargo products with the same

4

trademarks at issue in the prior litigation, which was resolved by the parties' settlement agreement; (iii) the claim requires a determination of whether Cequent's sales are those permitted under the settlement agreement; (iv) LGA premised the trademark infringement claim on the settlement agreement's termination of the parties' license agreement; and (v) the district court ruled that six other LGA claims based on the same alleged conduct (including Claim Twelve for reverse passing off) were arbitrable?

4.    Did the district court err by ruling that Claim Eight (false advertising) was not arbitrable when: (i) the breadth of the arbitration clause triggers a heavy presumption in favor of arbitrability, which LGA had not overcome; (ii) LGA's claim challenges Cequent's marketing and sale of the same cargo products at issue in the prior litigation, which was resolved by the parties' settlement agreement; (iii) the claim requires a determination of whether Cequent's sales are those permitted under the settlement agreement; (iv) LGA premised the claim on the settlement agreement's termination of the parties' license agreement; and (v) the district court ruled that six other LGA claims

based on the same alleged conduct (including Claim Twelve for reverse passing off) were arbitrable?

5.     Did the district court err by ruling that Claim Nine (copyright infringement) was not arbitrable when: (i) the breadth of the arbitration clause triggers a heavy presumption in favor of arbitrability, which LGA had not overcome; (ii) LGA's claim challenges Cequent's sales of the same "GearCage" cargo product, manuals, and packaging at issue in the prior litigation, which was resolved by the parties' settlement agreement; (iii) LGA premised the claim on the settlement agreement's termination of the parties' license agreement; and (iv) the district court ruled that six other LGA claims based on the same alleged conduct (including Claim Ten for removal of copyright management information) were arbitrable?

6.     Did the district court err by ruling that Claim Eleven (unfair competition) was not arbitrable when: (i) the breadth of the arbitration clause triggers a heavy presumption in favor of arbitrability, which LGA had not overcome; (ii) LGA's claim challenges Cequent's marketing and sale of the same cargo products at issue in the prior litigation, which was resolved by the parties' settlement agreement; (iii) the claim

requires a determination of whether Cequent's sales are those permitted under the settlement agreement; (iv) LGA premised the claim on the settlement agreement's termination of the parties' license agreement; and (v) the district court ruled that six other LGA claims based on the same alleged conduct (including Claim Twelve for reverse passing off) were arbitrable?

7.     Did the district court err in determining that, while LGA's Claims 4-5, 7-9, and 11 were based on Cequent's continued post-settlement sales of cargo products that were the subject of the settlement agreement, they were not arbitrable based on the court's interpretation that the arbitration clause was limited only to disputes over pre-agreement conduct, when the arbitration clause was not so limited, and when a release clause in the same agreement already released the parties from liability for all pre-agreement conduct, negating the possibility of any arbitrable disputes over pre-agreement conduct?

## STATEMENT OF THE CASE

### I.   Prior License

The parties' rocky relationship began in January 2008 when they entered into a license agreement (the "License") that permitted Cequent to sell vehicle cargo-management products over which LGA claimed to have enforceable IP rights, including patent rights. (License, A232-238). In return for the purportedly exclusive license, Cequent paid LGA over $586,000. (*See* Compl. ¶ 3 in *Cequent v. Let's Go Aero*, D. Colo., Case No. 1:10-cv-02921-MSK-CBS ("*LGA I*"), A30-31.)

Those licensed products are vehicle cargo products, and were identified in Exhibit 1 to the License as: "Pixie," "Silent Hitch Pin," "Gear Cage," "Gear Deck," "Gear Space," "Twin Tube," "Juice Box," and "Gear Bed." (collectively, the "Products"). (*See* Ex. 1 to License, A237.)

The "Silent Hitch Pin" is a spring-loaded pin that holds a rear vehicle hitch together without rattling. (*See* '550 patent, Summary of Invention, A969.) The "Pixie" is a hitch-mounted bike rack. ('917 patent, A944.) The other products hitch to the back of vehicles to provide additional cargo space. The photograph below of the GearCage from LGA's website is an example of the type of products at issue.



GearCage

(Image captured from www.letsgoaero.com/GearCage-SP-6-p/gcsp-6htm on Sept. 17, 2014; A168.)

Cequent later discovered that it received nothing in return for its cash payments because LGA had no patent rights to most, if not all, of the products covered by the License. This was because LGA did not pay the patent maintenance fees resulting in loss of patent rights, and it failed to respond to pending office actions that allowed applications to go abandoned, among other reasons. (*LGA I* Compl. ¶ 4-5, A31.)

Without receiving any patent rights, Cequent paid nearly $600,000 to LGA on products that anyone in the public domain could manufacture and sell without having to pay LGA, depriving Cequent of the benefit of its purportedly exclusive bargain. Cequent therefore demanded that LGA remedy its breaches.

## II.    <u>First Lawsuit and Settlement with Arbitration Clause</u>

When LGA refused to acknowledge or remedy its breaches of the License, Cequent filed the *LGA I* case in the United States District Court for the District of Colorado to obtain relief. (*LGA I* Compl., A30) Cequent sued in Colorado because of a forum selection clause in the License. (License ¶ 11, A343.) LGA counterclaimed in *LGA I*, alleging that Cequent's sales of the Products violated the patents, patent applications, and trademarks identified in the License. (*See LGA I* Am. Countercl. ¶ 113, A77-78.)

Due to the mediating efforts of Magistrate Judge Craig Shaffer of the Colorado district court, the parties settled under a January 28, 2012, "Settlement Agreement and Release" (the "Agreement"). (Agreement, A281-291.) Under the Agreement, Cequent paid $17,500 to LGA "to phase out silent-hitch pins that Cequent has in inventory or on order," which totaled 25,792 units. (Agreement ¶ 2, A349; Ex. 1 to Agreement, A358.) The Agreement included release provisions, under which the parties released each other from liability for pre-settlement conduct. (Agreement ¶¶ 4-5, A283-84.)

The parties also agreed that, for future disputes "arising from or relating to" the Agreement, the parties would try and negotiate a settlement and, if unable to resolve the matter, submit the dispute to binding arbitration. (*Id.* ¶ 23, A289.) Instead of LGA's home state of Colorado, the parties chose a neutral location for arbitration: Chicago. The parties' arbitration clause—a standard clause that the parties obtained from the American Arbitration Association (*see* A226-227, 294, 303-305)—states:

> In the event of <u>any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof</u>, the Parties shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties.
>
> If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. Venue for the arbitration proceedings shall be in Chicago, Illinois, and the arbitration shall be conducted by a single neutral arbitrator.

(Agreement ¶ 23, A289 (emphasis added).)

The Agreement also terminated the License. (*Id.* ¶ 1, A282.)

11

## III.  Second Lawsuit

### A.  LGA's Claims

On June 6, 2014, LGA bypassed the 60-day resolution period and arbitration clause by suing in Colorado federal court. *Let's Go Aero, Inc. v. Cequent Performance Products, Inc.*, Case No. 1:14-cv-01600-RM-MEH, ("*LGA II*"). As in *LGA I*, LGA again claimed that Cequent's sales of certain Products, namely the "Silent Hitch Pin," "Pixie," and "GearCage," violates LGA's purported IP rights. (*Compare LGA I* Am. Countercl. ¶ 113, A77-78, *with* 2d Am. Compl. ¶¶ 8-10, 12-13, A192-193.)

LGA again asserted the following patents that it asserted in *LGA I*, and which were identified in the License that the parties terminated as part of the Agreement: U.S. Patent Nos. 6,409,203; 6,609,725; 6,945,550; and 6,910,609. (Ex. A to License, A237; *LGA I* Am. Countercl. ¶¶ 113-114, A77-78; 2d Am. Compl. ¶¶ 16, 24, 27, A193-197.) U.S. Patent Nos. 8,079,613 and 8,079,491, which LGA also asserts in *LGA II*, issued after the commencement of *LGA I*, but before the Effective Date of the Agreement. (2d Am. Compl. ¶¶ 16, 24, A193-196.) Those two patents issued from applications (U.S. App. Nos. 11/382,917

and 10/711,961, respectively) that LGA asserted in *LGA I*. (*See LGA I* Am. Countercl. ¶ 113, A77-78; *see also* '613 patent, A981; '491 patent, A972.) The same lawyer who represented LGA in *LGA* I and negotiated the Agreement on its behalf, represents LGA in *LGA II* and represents LGA on this appeal. (A218, 278, 288.)

LGA alleges that the termination of the License—a termination triggered by Paragraph 1 of the Agreement—ended Cequent's right to sell the Products and, therefore, makes Cequent's alleged ongoing sales of one or more of the Products actionable in tort and under the Patent Act, Copyright Act, and Lanham Act. (2d Am. Compl. ¶¶ 11-16, A192-194.)

Although LGA uses various names in *LGA II* to describe its causes of action such as "Patent Infringement," "Declaratory Judgment," "Unjust Enrichment and Accounting," and "Civil Conspiracy," the gist of each claim is the same: Cequent's alleged continuation of sales and marketing of the Silent Hitch Pin, Pixie/SportWing, and GearCage products (with associated product packaging and manuals) since the Agreement violates LGA's purported IP rights.

## B.   Cequent Moves to Compel Arbitration

Because LGA's lawsuit challenges Cequent's sales of the same cargo products and asserts the same intellectual property rights that were subject to the Agreement, at issue in the litigation it settled, and subject to the terminated License, Cequent moved to compel arbitration in accordance with the Agreement's arbitration clause.  (*Compare* Am. Countercl. ¶¶ 113-114, A77-78, *with* 2d Am. Compl. ¶ 12, A192-93.) More specifically, Cequent sought an order compelling arbitration or "in the alternative, to stay proceedings under 9 U.S.C. § 3 pending the outcome of arbitration." (Motion, A219.)

LGA opposed the motion on the merits. It also objected on the basis of venue because the arbitration clause requires arbitration to occur in Chicago, Illinois. (LGA's Opposition, A369-370, 381-382.)

In response, to LGA's venue objection, Cequent filed a petition to compel arbitration in the United States District Court for the Northern District of Illinois—the district court that LGA argued has venue to compel arbitration in Chicago, Illinois. (Petition, A421.)

In its reply brief to the Colorado court, Cequent notified the court about the Illinois petition and asked it to rule that there was at least

"some probability" that LGA's claims were arbitrable and to stay the case pending a full arbitrability decision by the Illinois court. (Cequent Reply, A399-400.) Cequent adopted the "some probability" language from a prior decision by a Colorado district court dealing with a similar situation where a defendant had moved to compel arbitration outside of Colorado. *See Bushman Inv. Properties, Ltd. v. DBSI E-470 East LLC*, No. 09-00674, 2010 WL 582351, at *3 (D. Colo. Feb. 16, 2010).

On LGA's motion, the Illinois court stayed the case, pending a decision by the Colorado court on arbitrability. (Minute Entry, A908.) Because of this appeal, the Illinois case remains stayed.

## C.  The Colorado Court Denies, In Part, Cequent's Motion

On January 28, 2015, the Colorado court granted, in part, and denied, in part, Cequent's motion to compel arbitration. (Order, A1.) The district court ruled: (i) Claims One, Two, Three, Six, Ten, and Twelve were within the scope of the arbitration clause and, therefore, arbitrable (the "Granted Claims"); and (ii) Claims Four, Five, Seven, Eight, Nine, and Eleven were outside the scope of the arbitration clause and, therefore, not arbitrable (the "Denied Claims"). The court incorrectly interpreted the arbitration clause and then applied it

15

inconsistently to each of LGA's claims. For example, the Court ruled that Claim One arose from or related to the Agreement, but that Claim Four did not, despite Claims One and Four being based on the same alleged facts.

It then stayed the case as to the Granted Claims for a *de novo* review of arbitrability of those claims by the Illinois court. (Order at 20-21, A20-21.) The order, however, did not contemplate the Illinois court deciding arbitrability of the Denied Claims.

The Colorado court requested further briefing from the parties on whether litigation on the Denied Claims should be stayed—not so the Illinois court could decide arbitrability of those claims—but because of the preclusive effect that the arbitrator's decision on the merits of the Granted Claims might have on the Denied Claims. (Order at 21, A21.)

On February 3, 2015, Cequent timely appealed the adverse decision on its motion to compel arbitration under 9 U.S.C. § 16. (See Notice of Appeal.)

Cequent moved to stay the district court proceedings pending this appeal. (Mot. to Stay, A909.) LGA opposed Cequent's motion, arguing the appeal was frivolous. (Opp. to Stay, A914-15.) The Colorado court

ruled that Cequent's appeal was not frivolous and granted a stay. (Stay Order, A922.)

On March 5, 2015, LGA moved to dismiss this appeal. This Court denied LGA's motion, and instructed LGA to raise its arguments in its Appellee Brief.

## SUMMARY OF ARGUMENT

The district court correctly ruled that six of LGA's twelve claims were arbitrable. Because the other six claims arise from or relate to the same facts and circumstances as those found arbitrable, the court erred by deciding that the other six were not arbitrable.

The arbitration clause covers all disputes "arising from or relating to" the Agreement, so that the law imposes a heightened presumption in favor of arbitration. A party rebutting that enhanced presumption can only do so with "the most forceful evidence of a purpose to exclude the claim from arbitration." *AT & T v. Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, LGA could not, and cannot, rebut the heightened presumption of arbitrability on any of the Denied Claims because there is no language in the arbitration clause, or in other parts of the Agreement, that forcefully evidence "a purpose to exclude" these types of disputes from arbitration. On the contrary, all of LGA's claims "relate to" the Agreement because all of them: (i) challenge the very same cargo products and IP at issue in *LGA I*, which was resolved by the Agreement; (ii) allege that the violation for each claim started on the

Agreement's January 28, 2012, termination of the License; and (iii) require a determination of whether Cequent's post-settlement sales of "Silent Hitch Pins" were those permitted by the Agreement's "phase out" provision.

By ruling that only half of the claims were arbitrable despite all of them being based on the same facts and circumstances, the district court misconstrued the arbitration clause. While the district court acknowledged the arbitration clause at issue was "broad," it did not construe it that way or apply the heightened presumption of arbitrability that a broad clause requires. Instead, the court applied the arbitration clause *narrowly* to disputes over pre-settlement conduct. (Order at 15, A15 (ruling "disputes concerning conduct which occurred subsequent to the termination of the License Agreement" are not subject to arbitration).) Thus, under the district court's erroneous view, what matters is the timing of the facts at issue, regardless of whether the claims or those facts arise from or relate to the Agreement.

The court's interpretation is in error because the plain language of the arbitration clause is not limited to trigger only when pre-settlement conduct is at issue. Instead, it applies to "any dispute," which of course

would include disputed conduct that occurs after the effective date of the Agreement, as any arbitration clause would.

The court's construction is also incorrect, for it renders the arbitration clause meaningless. This is because the parties released each other from all claims and liabilities for pre-settlement conduct. Because the parties released all pre-settlement claims, the district court's interpretation that the arbitration clause only applies to those released pre-settlement claims makes no sense. In fact, the opposite is true: pre-settlement conduct was released and post-settlement conduct arising from or relating to the agreement would go to arbitration.

Because the district court determined that six of LGA's claims arise from or relate to the Agreement, and because the remaining six claims involve the same facts and circumstances as the six arbitrable claims, there is no way to conclude no arbitrability without misconstruing the Agreement. Therefore, this Court should reverse the district court's order that Claims 4, 5, 7, 8, 9, and 11 are not arbitrable, enter a ruling that those claims are arbitrable, and issue a mandate instructing the district court to stay all proceedings pending arbitration in Chicago, Illinois.

# ARGUMENT

## I. The District Court Erred by Deciding Certain LGA Claims Were Not Arbitrable

### A. Standard of Review

The Federal Circuit is "obligated to follow regional circuit law on questions of arbitrability that are not 'intimately involved in the substance of enforcement of a patent right.'" *Microchip Technology Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004), *quoting Flex-Foot Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001). Here, the issues of arbitrability are not intimately involved in the substance of enforcement of a patent right and, therefore, this Court follows Tenth Circuit law on arbitrability to the extent it is consistent with Supreme Court precedent. *Microchip*, 367 F.3d at 1356.

The Tenth Circuit shows no deference to a district court's denial of a motion to compel arbitration and decides arbitrability *de novo. Sanchez v. Nitro-Lift Technologies, L.L.C.*, 762 F.3d 1139, 1145 (10th Cir. 2014)

**B.    Law for Interpreting
       and Applying Arbitration Clauses**

The Federal Arbitration Act empowers district courts to compel arbitration and to stay litigation pending arbitration when there is an agreement to arbitrate and a litigant refuses to arbitrate. *See* 9 U.S.C. §§ 3, 4.

There is a "liberal federal policy favoring arbitration agreements." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

Whether a case is arbitrable is a question of law for the Court. *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010).

"Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v . Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

### C.    The Arbitration Clause Is Broad

"[I]n deciding if a dispute is arbitrable, a court must initially determine whether the arbitration provision is broad or narrow." *Newmont*, 615 F.3d at 1274, *citing Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005).

The arbitration clause here covers all disputes "arising from or relating to this Agreement or the breach thereof." (Agreement ¶ 23, A491.) Courts universally agree that type of language, promulgated by the American Arbitration Association, is broad. *City and County of Denver v. District Court in and for City and County of Denver*, 939 P.2d 1353, 1367 (Colo. 1997) (en banc) ("typical American Arbitration Association clause containing the words 'arising out of or relating to the agreement' is 'broad'"); *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (clause covering "all disputes or controversies arising under or in connection with this Agreement" is "very definition of a broad arbitration clause"); *Promega Corp. v. Life Technologies Corp.*, 674 F.3d 1352, 1357 (Fed. Cir. 2012) ("arising out of or relating to" language is broad); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174

F.3d 907, 909-10 (7th Cir. 1999) (such clause is "extremely broad and capable of an expansive reach").

In fact, because the clause at issue covers any dispute "arising from *or relating to*" the Agreement, the clause is even broader than a clause covering only disputes "arising from" an agreement—language that the 10th Circuit recognizes as broad by itself. *Cummings*, 404 F.3d at 1262 (clause covering "all disputes arising out of a contract" is broad); *Newmont*, 615 F.3d at 1274-75 (same); *see Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (noting addition of "or relating to" further broadens "arising from" clause).

As the district court correctly found (Order at 12, A12), the arbitration clause here is broad.

## D.    The Breadth of the Clause Strengthens the Already Strong Presumption of Arbitrability

When, as here, the arbitration clause is "broad," the already strong presumption favoring arbitration "applies with even greater force." *P & P Indus, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999).

The heightened presumption triggered by a broad clause may only be rebutted with "the most forceful evidence of a purpose to exclude the

claim from arbitration." *AT & T v. Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

Thus, with a broad clause, "[i]f the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Burlington Northern & Santa Fe Ry. Co. v. PSO.*, 636 F.3d 562, 570 (10th Cir. 2010.)

### E.    The District Court's Arbitrability Analysis Was Erroneous

The district court erring by determining that, even if an LGA claim arises from or relates to the Agreement, the claim is not arbitrable if the alleged conduct occurred "subsequent to the termination of the License Agreement." (Order at 15, A15.) The district court used that mistaken determination to conclude that Claims Four, Five, Seven, Eight, Nine, and Eleven were not arbitrable. The district court's interpretation of the arbitration clause is legally erroneous for several reasons.

First, the controlling language of the arbitration clause itself is not limited to disputes over pre-settlement conduct. By its own words, the provision applies to "any dispute" that is "arising from or relating to

this Agreement or the breach thereof," without any temporal limitation. Under the district court's erroneous interpretation, a future "breach" of the Agreement (which is explicitly covered by the clause) would not be subject to arbitration. The court's interpretation contradicts the plain meaning of the clause and must be rejected, especially in light of the heavy presumption of arbitrability and the requirement that the court construe clauses in favor of arbitration. (*See supra* pp. 22-25.)

Second, the court's interpretation renders the arbitration clause meaningless. The Agreement contains releases that release each party from liability for any "act or omission . . . occurring prior to the Effective Date" of the Agreement. (Agreement ¶¶ 4, 5, A283-84.) Thus, under those provisions, there can be no lawsuit, dispute, or arbitration over pre-agreement conduct. Yet the district court interpreted the arbitration clause as applying <u>only</u> to pre-agreement conduct.

Under this erroneous interpretation: (i) the release clauses are meaningless because parties can re-litigate through arbitration pre-settlement conduct; and (ii) the arbitration clause is meaningless because the parties can take post-settlement conduct to federal court. Applying the plain language of the Agreement reaches the opposite

conclusion: the parties agreed to settle and release all disputes over pre-agreement conduct and agreed to arbitrate any disputes over post-agreement conduct. The district court's reading of the arbitration clause reaches an absurd result that could not have been intended by the parties. *See Kaiser v. Bowlen*, 455 F.3d 1197, 1206 (10th Cir. 2006) (under Colorado law, "a contract should never be interpreted to yield an absurd result"), *quoting Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. Ct. App. 2001); *see also* Restatement (Second) of Contracts § 203(a) (1979) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

Third, the district court misinterpreted the import of the "Limitation on Release" provision of Paragraph 6 of the Agreement. (A284). That provision states that the "releases in paragraphs 1, 4, and 5 do not (and are not intended to) release or waive any claim, demand, action, or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date." The district court incorrectly read this language into the arbitration clause,

concluding that the parties "excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement." (Order at 15, A15.)

While it is true that "disputes" over future conduct were not released, those are the very disputes subject to the arbitration clause in Paragraph 23. If the parties had intended to exclude post-settlement conduct from the arbitration clause they would have included the arbitration clause in the limitation provision of Paragraph 6. That they did not do so, confirms that they did not intend to so limit the arbitration provision. Thus, Paragraph 6 of the Agreement confirms that post-settlement conduct **_is_** subject to the arbitration clause. *See Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001) ("Under the rule of interpretation *expressio unius exclusio alterius*, the inclusion of certain items implies the exclusion of others.")

This Court should reject the district court's flawed interpretation of the arbitration clause and the erroneous analyses flowing from that incorrect interpretation. As explained in the next section, this Court should apply a *de novo* review and rule that each of the Denied Claims must be arbitrated.

**F.    All of LGA's Claims Are Arbitrable**

All of LGA's claims are arbitrable because each one "touch[es] matters covered by the" Agreement, *see Burlington*, 636 F.3d at 570, and there is no "forceful evidence of a purpose to exclude the claim from arbitration." *AT & T*, 475 U.S. at 650.

The Agreement settled a dispute between Cequent and LGA over Cequent's sales of the Products and alleged violations of LGA's purported IP rights to those products. (*See LGA I* Am. Countercl. ¶ 113-114.) This dispute is between the same parties over the same subject matter: a dispute over Cequent's marketing and sale of the Products (i.e., the GearCage, Pixie/SportWing bike rack, and Silent Hitch Pin) and LGA's alleged IP rights to them. Thus, this lawsuit relates to the Agreement and is fully arbitrable.

Moreover, LGA alleges each of its claims start on the January 28, 2012, effective date of the Agreement, by alleging that the Agreement's termination of the License ended Cequent's rights to continue selling and marketing the Products:

- "Cequent's right to manufacture, distribute, license and sell LGA's Pixie/SportWing terminated on January 28, 2012." (2d Am. Compl. ¶ 22, A196.)

- "Cequent's right to manufacture, distribute and sell LGA's Silent Hitch Pin terminated on January 28, 2012, except for a permitted phase-out of Cequent's then-existing inventory and customer commitments of approximately 23,300 Silent Hitch Pins, which is believed to have been completed." (*Id.* ¶ 25, A196.)

- Cequent's right to manufacture, distribute and sell LGA's GearCage terminated on January 28, 2012." (*Id.* ¶ 28, A197.)

Its lawsuit, therefore, hinges entirely on the rights allegedly rescinded by the Agreement, so that the entire lawsuit "relates to" the Agreement. LGA's alleging the "termination" of the License on January 28, 2012— which was effected by the Agreement—at least 49 times further proves that this dispute arises from or relates to the Agreement. (*See generally* 2d Am. Compl., A190.)

Indeed, LGA's pleadings attempted to draft around the arbitration clause, which in and of itself is evidence that the clause applies. LGA never identifies the Agreement by name, despite its repeated reliance on the January 28, 2012, effective date of the Agreement as the start date of its claims. This confirms that LGA: (i) admits that all conduct prior to January 28, 2012, is subject to the release; and (ii) has something to hide and is trying to use artful pleading to for its claims starting on the effective date of the Agreement. Such artful pleading

efforts cannot avoid arbitration. *See Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009) (court must "[f]ocus[] on the facts rather than on a choice of legal labels [to] prevent[] a creative and artful pleader from drafting around an otherwise-applicable arbitration clause"). Below is a more detailed analysis of each claim that the district court found not arbitrable.

### 1. *Claim Four -- Intentional Interference*

LGA's Claim Four alleges that Cequent "disrupted the relationship between LGA and the market . . . through wrongful conduct, including . . . sale of the LGA Inventions from and after the termination of the License Agreement." (2d Am. Compl. ¶ 67, A208.) This claim relates to the Agreement because, first, the "termination of the License Agreement" that it relies on was effected by the Agreement. (*Id.*)

Second, LGA defines the "LGA Inventions" as the "Silent Hitch Pin," "GearCage," and "Pixie/Sportwing" bike rack. (2d Am. Compl. ¶ 12, A192-93.) Each of these products was at issue in *LGA I*, which was settled by the Agreement. (*LGA I* Am. Countercl. ¶ 113, A77-78.) And each product was covered by the License, which the Agreement

terminated. (Ex. A to License, A57.). Because Claim Four challenges Cequent's sale of the same products that were at issue in *LGA I* and subject to the Agreement, this claim arises from and relates to the Agreement.

Third, this claim relates to the Agreement's phase-out provision in Paragraph 2 of the Agreement. As LGA's pleading acknowledges, the Agreement's phase-out provision permitted Cequent to sell up to 25,792 Silent Hitch Pins. (Agreement ¶ 2, A282; 2d Am. Compl. ¶ 25, A196.) Therefore, before the arbitrator can decide whether Cequent's post-settlement Silent Hitch Pin sales were "wrongful," it must decide whether Cequent's Silent Hitch Pins sales were permitted under the Agreement.

Furthermore, the district court's ruling that this claim is not arbitrable directly contradicts its ruling that Claim One is arbitrable. Claim One alleges that "from and after January 28, 2012 Cequent did not have the lawful right to manufacture, distribute, license or sell products identical to or substantially similar to the LGA Inventions or to use LGAs Trademarks or LGA Copyrighted Materials without the express consent of LGA." (2d Am. Compl. ¶ 41(a), A202-203.) LGA bases

Claim Four on the same alleged conduct: "From and after the termination of the License Agreement, Cequent has intentionally and improperly disrupted the relationship between LGA and the market . . . through wrongful conduct, including . . . selling and copying LGA Inventions and Sales Media as well as using LGA Trademarks and LGA Copyrights in conjunction therewith . . ." (*Id.* ¶ 67, A208.)

Claim Four relates to the Agreement for the same reasons that Claim One does, and the district court erred by ruling otherwise.

### 2.    *Claim Five -- Direct Patent Infringement*

LGA's Claim Five alleges that Cequent's sales "[s]ince the termination of the License Agreement on January 28, 2012" constitute an "unlawful infringement of LGA's rights in the LGA Inventions." (2d Am. Compl. ¶ 70, A209.) As with Claim Four, this claim relates to the Agreement because: (i) it relies on the "termination of the License Agreement," which was effected by the Agreement; (ii) the products accused of infringement, the "LGA Inventions," and the patents asserted were at issue in *LGA I* and subject to the Agreement; and (iii) the claim requires the Court to determine whether Cequent's Silent

Hitch Pin sales were within the phase out provision of the Agreement and, therefore, not actionable as patent infringement.

The district court's rulings that Claim Five is not arbitrable cannot be reconciled with its ruling that Claim Six is arbitrable. Claim Six alleges that Cequent's sale of the Silent Hitch Pin products indirectly infringes the '203 and '550 patent. Claim Five alleges that Cequent's sale of the Silent Hitch Pins directly infringes those same patents. Direct infringement is a proof element of indirect infringement. Because the Court ruled the indirect infringement claim is arbitrable, the direct infringement claim under Claim Five must also be arbitrable.

### 3.   *Claim Seven -- Trademark Infringement*

LGA's Claim Seven alleges that Cequent infringed LGA trademarks by using "LGA Trademarks" since January 28, 2012. (2d Am. Compl. ¶ 85, A211.) This claim relates to the Agreement because: (i) it relies on the January 28, 2012, termination of the License that, according to LGA, ceased Cequent's rights to use those alleged marks (s*ee* 2d Am. Compl. ¶¶ 85-87, A211-212); (ii) the trademarks and products were at issue in *LGA I* and subject to the Agreement (*see LGA I* Am. Countercl. ¶ 113, A78 (identifying product names as "Trademark

Registered")); and (iii) Cequent's sales of Silent Hitch Pins, with packaging allegedly labeled "Silent Hitch Pin," were permitted by the Agreement's phase-out provision.

### 4.  *Claim Eight -- False Advertising*

LGA's Claim Eight asserts that Cequent falsely advertised by selling "LGA Inventions," including the Silent Hitch Pins, "after termination of the License Agreement" without "disclos[ing] certain material facts regarding the LGA Inventions." (2d Am. Compl. ¶ 91, A212-213.) This claim relates to the Agreement because: (i) it relies on the Agreement's "termination of the License Agreement"; (ii) the products at issue (i.e., the "LGA Inventions") were at issue in *LGA I* and subject to the Agreement; and (iii) it requires interpretation and application of the Agreement's phase-out provision to determine if Cequent's Silent Hitch Pin sales, and accompanying commercial statements or non-statements, were permitted.

### 5.  *Claim Nine -- Copyright Infringement*

LGA's Claim Nine asserts that Cequent infringed "LGA Copyrights" by distributing LGA product manuals for the GearCage "after the termination of the License Agreement." (2d Am. Compl. ¶ 97,

A213.) This claim relates to the Agreement because: (i) it relies on the Agreement's "termination of the License Agreement"; and (ii) the product at issue, the "GearCage," was at issue in *LGA I*, which was settled by the Agreement (*LGA I* Am. Countercl. ¶ 113, A77-78).

### 6.    *Claim Eleven -- Unfair Competition*

LGA's Claim Eleven alleges that Cequent unfairly competed by selling copies of "LGA products" "after the termination of the License Agreement." (2d Am. Compl. ¶ 104, A215.)

This claim relates to the Agreement because: (i) it relies on the Agreement's "termination of the License Agreement"; (ii) challenges Cequent's sales of the same cargo products at issue in *LGA I* and subject to the Agreement; and (iii) it requires interpretation and application of the Agreement's phase-out provision to determine if Cequent's silent hitch pin sales were allowed, and therefore not unfair competition to sell.

The district court's incorrect ruling that Claim Eleven is not arbitrable directly contradicts its ruling that Claim One is arbitrable because both claims are based on an allegation that Cequent's post-settlement sales and marketing of the Silent Hitch Pin, GearCage, and

Pixie/SportWing products are not permitted and unlawful. The claims are duplicative and cumulative, both relate to the Agreement, and both are arbitrable.

In sum, the parties' broad arbitration clause creates a strong presumption of arbitrability, and neither the court nor LGA identified any "forceful evidence" of intent to exclude any of the claims from arbitration. This Court should reverse the district court and rule that all of LGA's claims must be arbitrated.

## <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

All twelve of the claims asserted by LGA are covered by the arbitration clause in the Agreement and, therefore, all of those claims must be decided through binding arbitration in Chicago, Illinois, in accordance with the parties' Agreement.

Therefore, this Court should reverse the district court's finding that Claims Four, Five, Seven, Eight, Nine, and Eleven are not arbitrable, enter a ruling that those claims are arbitrable, and issue a mandate instructing the district court to stay all proceedings pending arbitration in Chicago, Illinois.

Respectfully submitted,

Dated: July 1, 2015        s/ David B. Cupar
David B. Cupar
Matthew J. Cavanagh
MCDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

*Counsel for Defendant-Appellant
Cequent Performance Products, Inc.*

38

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to plaintiff-appellee Let's Go Aero, Inc., whose attorney is a registered user of the CM/ECF system.


_s/ David B. Cupar_____
*Counsel for Defendant-Appellant*
*Cequent Performance Products, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Fed. R. App. P. 32(a)(7) and Federal Circuit Rule 28(a)(14), the foregoing Brief was prepared in MS Word 2010, is proportionally spaced, has a typeface of 14 points Century Schoolbook, and contains 6,655 words, excluding those sections identified in Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

 s/ David B. Cupar
*Counsel for Defendant-Appellant*
*Cequent Performance Products, Inc.*

**ADDENDUM**

## ADDENDUM

ORDER granting Motion to Set Aside Clerks entry of default and granting in part Motion to Compel Arbitration, docket number 46 (01/28/2015)........A00001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 14-cv-01600-RM-MEH

LET'S GO AERO, INC., a Colorado corporation,

     Plaintiff,

v.

CEQUENT PERFORMANCE PRODUCTS, INC., a Delaware corporation, f/k/a Cequent
Towing Products, Inc.,

     Defendant.

---

## ORDER

---

This matter is before the Court on Defendant Cequent Performance Products, Inc.'s

("Cequent") motion to set aside the default entry (ECF No. 42) and its motion to compel

arbitration (ECF No. 29).

For the reasons stated below, the Court GRANTS Defendant's motion to set aside the

default entry and GRANTS, in part, Defendant's motion to compel arbitration.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

In 2008, Defendant and Plaintiff Let's Go Aero, Inc. ("Let's Go Aero" or "LGA")

entered into a license agreement ("License Agreement") that permitted Defendant to sell certain

cargo-management products over which Let's Go Aero claimed to have enforceable intellectual

property rights, including patent rights or pending patents.  (ECF No. 29-1, License Agreement.)

Those products included the:  "Pixie," "Silent Hitch Pin," "Gear Cage," "Gear Deck," "Gear

Space," "Twin Tube," "Juice Box," and "Gear Bed" (collectively, the "Products"). (ECF No.

29-1 at 7, License Agreement at Ex. A.) The Products are vehicle cargo-management products.

In 2010, Defendant filed suit against Plaintiff alleging breaches of the License Agreement

(the lawsuit is hereinafter referred to as "LGA I"). (ECF No. 29-2, Compl. in LGA I.) In

response, Plaintiff counterclaimed in LGA I and alleged that Defendant's sales of the Products

violated Plaintiff's intellectual property rights. (ECF No. 29-3, Am. Countercl. in LGA I.)

In 2012, the parties resolved the LGA I litigation. In resolving the prior dispute, the

parties entered into a settlement agreement ("Settlement Agreement"). (ECF No. 29-4,

Settlement Agreement[1].) The parties' Settlement Agreement contains an arbitration provision.

(ECF No. 29-4 at 10, Settlement Agreement ¶ 23.) The arbitration provision provides the

following:

> In the event of any dispute, claim, question, or disagreement arising from or
> relating to this [Settlement A]greement or the breach thereof, the [p]arties shall
> use their best efforts to settle the dispute, claim, question, or disagreement. To
> this effect, they shall consult and negotiate with each other in good faith and,
> recognizing their mutual interests, attempt to reach a just and equitable solution
> satisfactory to both parties. If they do not reach such solution within a period of
> 60 days, then, upon notice by either party to the other, all disputes, claims,
> questions, or differences shall be finally settled by arbitration administered by the
> American Arbitration Association in accordance with the provisions of its
> Commercial Arbitration Rules. Venue for the arbitration proceedings shall be in
> Chicago, Illinois, and the arbitration shall be conducted by a single neutral
> arbitrator.

(ECF No. 29-4 at 10, Settlement Agreement ¶ 23.)

---

[1] The Court notes that the Settlement Agreement proffered by Defendant (ECF No. 29-4) is not signed by both
parties. (ECF No. 29-4 at 10.) Defendant, however, is the party which did not sign the Settlement Agreement and
which proffers the Settlement Agreement. And Plaintiff does not contest the authenticity of the Settlement
Agreement. Plaintiff, in response to the motion to compel, attached a document signed by both parties. (ECF No.
38-1.) Plaintiff points the Court to no differences in the documents. Therefore, the Court assumes that the
Settlement Agreement proffered by Defendant is authentic because it was Plaintiff's burden to dispute the material
facts in response to Defendant's motion to compel. *See Cook v. PenSa, Inc.*, Case No. 13-CV-03282-RM-KMT,
2014 WL 3809409, at *7 (D. Colo. Aug. 1, 2014) (citations omitted) (holding that the District of Colorado
"approaches disputes over whether the parties have agreed to arbitrate by applying 'a standard similar to that
governing motions for summary judgment.'")

The Settlement Agreement further provides, in pertinent part, that:

(1)       "The [p]arties agree that the previously executed License [Agreement] . . . [is]
terminated as of the Effective Date, such that neither [p]arty is indebted, obligated, or liable to
the other with respect to any claim, demand, or cause of action arising from facts or
circumstances prior to the Effective Date." (ECF No. 29-4 at 3, Settlement Agreement ¶ 1.)

(2)       "Cequent and [Let's Go Aero] each agree that neither [p]arty owes the other
[p]arty any money based on the License [Agreement] . . . as of the Effective Date.  Cequent
agrees to make a single, up-front payment of $17,500 to [Let's Go Aero] to phase out silent-hitch
pins that Cequent has in inventory or on order for commitments with its suppliers or customers
as of the Effective Date." (ECF No. 29-4 at 3, Settlement Agreement ¶ 2.)

(3)       "Cequent . . . releases [Let's Go Aero] . . . from any claims, demands, actions or
causes of action of every kind and description, which [it] has, had, may have, or may have had
against [Let's Go Aero]; including, but not limited to, the claims which Cequent asserted or
could have asserted in the [LGA I] as well as any right of action which Cequent may have,
whether known or unknown, arising from any act or omission by any [Let's Go Aero] or arising
from any fact or circumstance occurring prior to the Effective Date." (ECF No. 29-4 at 4,
Settlement Agreement ¶ 4.)

(4)       "[Let's Go Aero] . . .  releases Cequent . . . from any claims [sic] demands,
actions or causes of action of every kind and description, which [Let's Go Aero] has, had, may
have or may have had against [Cequent]; including, but not limited to, the counterclaims that
[Let's Go Aero] asserted or could have asserted in [LGA I] as well as any right of action which
[Let's Go Aero] may have, whether known or unknown, arising from any act or omission by

A00003

[Cequent] or arising from any fact or circumstance occurring prior to the Effective Date."  (ECF No. 29-4 at 4-5, Settlement Agreement ¶ 5.)

(5)    "The releases in paragraphs 1, 4, and 5 do not (and are not intended to) release or waive any claim, demand, action, or cause of action arising from the unlawful use of the other's intellectual property occurring after the Effective Date."  (ECF No. 29-4 at 5, Settlement Agreement ¶ 6.)

(6)    The "Effective Date" of this [Settlement] Agreement is January 28, 2012."  (ECF No. 29-4 at 2, 9, Settlement Agreement at 1, 8.)

### B.    Procedural Background

In this matter, the operative complaint ("Complaint"), filed on July 31, 2014, alleges that Defendant's sales of certain Products and other conduct violate Plaintiff's rights.  (*See* ECF No. 15.)

On September 17, 2014, Defendant moved to "compel arbitration and to administratively close this case, or in the alternative, to stay proceedings under 9 U.S.C. § 3 pending the outcome of arbitration" ("Motion to Compel Arbitration").  (ECF No. 29 at 1.)  In the Motion to Compel Arbitration, Defendant later asks that the Court grant its motion to compel arbitration and stay the proceedings in this matter.  (ECF No. 29 at 11.)  Defendant moves to compel arbitration on the basis that Plaintiff's claims, in their entirety, are covered by the arbitration provision in the parties' Settlement Agreement.  (ECF No. 29 at 1-2.)  Plaintiff opposes the Court's compelling arbitration.  (ECF No. 38.)  Plaintiff opposes the Motion to Compel Arbitration on the basis that its Complaint "is explicit that the misconduct alleged in this case occurred *after* the parties settled the prior lawsuit on January 28 [sic] 2012."  (ECF No. 38 at 1 (emphasis in original).)  Further, Plaintiff opposes the Motion to Compel Arbitration on the basis that the Court lacks

authority to compel arbitration because the parties agreed to arbitrate in a particular forum,

Chicago, Illinois, and only a district court in that forum has authority to compel arbitration.

(ECF No. 38 at 13.)

Also on September 17, 2014, Defendant moved to "stay discovery and continue the

Court's September 16, 2014, Minute Order (ECF #28), the scheduling obligations by that order,

and the October 16, 2014, Scheduling Conference until after the Court decides Cequent's

pending motion to compel arbitration (ECF #29)."  (ECF No. 30 at 1.)  On September 25, 2014,

Magistrate Judge Hegarty granted Defendant's motion to stay discovery and pretrial scheduling

as follows:  "The proceedings of this case are stayed temporarily pending resolution of the

Defendant's pending motion to compel arbitration."  (ECF No. 33 at 1.)

On October 23, 2014, Plaintiff moved for the entry of default against Defendant for

failure to answer or serve another response within the time permitted by the Federal Rules of

Civil Procedure or the Court's orders.  (ECF No. 40 at 2-3.)  On October 24, 2014, the Clerk of

the Court entered default against Defendant.  (ECF No. 41.)  Later on October 24, 2014,

Defendant moved to set aside the Clerk of the Court's entry of default.  (ECF No. 42.)  Plaintiff

opposes Defendant's motion to set aside the entry of default.  (ECF No. 44.)

On December 12, 2014, Plaintiff notified the Court that a related proceeding involving

the same parties and legal issues is presently before the United States District Court for the

Northern District of Illinois ("Illinois Action") in which Defendant petitioned that court to

compel arbitration.  (ECF No. 45 at 1; ECF No. 45-1 at 1.)  The Illinois Action, to the Court's

knowledge, is presently stayed.  (ECF No. 45 at 1.)

A00005

## II.   LEGAL STANDARDS

### A.   Setting Aside an Entry of Default

The Court "may set aside an entry of default for good cause. . . ."  Fed. R. Civ. P. 55(c).

The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant presents a meritorious defense.  *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (unpublished) (citation omitted); *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995) (unpublished) (citation omitted).  The Court may consider other factors as well. *Guttman v. Silverberg*, 167 F. App'x 1, 4 (10th Cir. 2005) (unpublished) (citation omitted). Setting aside a default entry is addressed to the sound discretion of the Court.  *Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 941 (10th Cir. 1987).

The good cause required for setting aside an entry of default "poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)."  *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997) (citation omitted).  The preferred disposition of any case is upon its merits and not through default.  *See Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

### B.   Federal Arbitration Act

Section 4 of the Federal Arbitration Act ("FAA"), in pertinent part, provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

A00006

Section 3 of the FAA requires a court to stay actions involving matters referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The FAA "manifests a 'liberal federal policy favoring arbitration.'" *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.*" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The "question of arbitrability—whether a [contract] creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (quoting *AT&T Techs., Inc. v. Commc'ns. Workers*, 475 U.S. 643, 649 (1986)).  The "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) (citation omitted).  "Before the party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid arbitration agreement exists between the parties and *whether the specific dispute falls within the scope of that agreement.*" *Houlihan v. Offerman & Co. Inc.*, 31

7

F.3d 692, 694-95 (8th Cir. 1994) (emphasis added and citation omitted); *see also Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515-16 (10th Cir. 1995).  The language of the contract defines the scope of disputes subject to arbitration.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation omitted).

The Court approaches disputes over whether the parties have agreed to arbitrate by applying "a standard similar to that governing motions for summary judgment."  *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citation omitted); *see also Goodwin v. H.M. Brown  Assocs., Inc.*, Case No. 10-CV-01205-PAB-MEH, 2011 WL 820025, at *3 (D. Colo. Mar. 2, 2011) (collecting cases).  Under this approach, the moving party bears the initial burden of presenting evidence sufficient to demonstrate than an enforceable arbitration agreement exists.  *Stein*, 396 F. Supp. 2d at 1212.  If the moving party satisfies that burden, the burden then shifts to the party opposing arbitration, which must show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56."  *Id*. at 1213.  Finally, the Court must "look to state law principles of contract formation to [determine] whether an agreement to arbitrate has been reached."  *Avedon Eng'g, Inc.*, 126 F.3d at 1287 (citations omitted).

III.   **ANALYSIS**

A.   **Setting Aside the Default Entry**

First, a willful failure to respond constitutes culpable conduct.  *United States .v Timbers Preserve, Rott Cty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993), abrogated on other grounds as recognized by *United States v. $285,350.00 in United States Currency*, 547 F. App'x 886, 887 (10th Cir. 2013).  Conversely, courts have held that an honest mistake by a defendant does not represent a willful failure to respond.  *E.g.*, *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d

A00008

790, 794 (6th Cir. 2002) (holding that default judgment may be set aside for "good cause, and upon a showing of mistake, or any other just reason"). Here, Magistrate Judge Hegarty stayed temporarily "[t]he proceedings of this case" pending resolution of Defendant's pending motion to compel arbitration. (ECF No. 33 at 1.) Defendant believed that the proceedings in this case were stayed in its entirety. Plaintiff argues that Defendant had only moved to stay discovery and the scheduling conference order (ECF No. 30). (ECF No. 44 at 3.) Plaintiff's point is well-taken but there is no ambiguity in Magistrate Judge Hegarty's order in which he stayed *the entire* proceedings. If there were any ambiguity as to Magistrate Judge Hegarty's September 25, 2014 order (ECF No. 33), it was incumbent upon the parties to file a motion for clarification.

Second, Defendant acted in good faith. In *Pinson*, the court found that the defaulted party evidenced its good faith when it submitted its motion to set aside the entry of default six days after its entry. *Pinson*, 316 F. App'x at 750. Here, Defendant moved to set aside the entry of default on the day it was entered. This quick response to remedy its mistake does not evidence a desire to delay litigation but, rather, provides further support for Defendant's contention that its failure to respond was an honest mistake. The Court, therefore, concludes that Defendant's failure to answer or otherwise respond to the Complaint via a Rule 12 motion was an honest mistake and Defendant acted in good faith.

Third, the Court finds that the slight delay in case proceedings caused by the failure to answer or respond to the Complaint with a proper Rule 12 motion will not prejudice Plaintiff's ability to prosecute this case.

Fourth, Defendant raises one defense in its motion: that Plaintiff's claims are subject to arbitration. (ECF No. 42 at 2.) As discussed below, the Court finds merit, in part, to this defense.

For these reasons, the Court grants Defendant's motion to set aside the entry of default.

Defendant argues that in the Tenth Circuit, "a defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint." (ECF No. 42 at 2.)  The Court does not find Defendant's argument persuasive as the authority upon which Defendant relies is distinguishable from Defendant's actions in this matter.  In both cases upon which Defendant relies, *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 606 (10th Cir. 2011) and *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 83 (2000), the defendants moved to compel arbitration or, alternatively, to dismiss the matters.  In this case, Defendant did not move in the alternative to dismiss the matter and thus did not respond to the Complaint.  Therefore, the Court grants Defendant seven days leave from the entry of this Order to answer or respond to the Complaint.

## B.      Motion to Compel Arbitration

Both parties advocate an all-or-nothing approach to Defendant's motion to compel this matter's claims.  If only life and the issues raised by Defendant's motion to compel were that simple.  Rather, like life, a more nuanced approach to Defendant's motion to compel is necessary.  That is, the Court must analyze whether each claim "aris[es] from or relat[es] to th[e] [Settlement] Agreement." (ECF No. 29-4 at 10, Settlement Agreement ¶ 23.)  If such claim does—that claim is arbitrable.  If such claim does not—then that claim is non-arbitrable and subject to litigation in the Court.

1.    The Arbitration Clause is Broad as to Claims Arising Out of or Related to the Settlement Agreement[2]

As a threshold matter, the Court must determine whether the parties' arbitration clause is broad or narrow.  The Tenth Circuit Court of Appeals has consistently held that the phrases "arising out of or relating to" mean that the parties intended their arbitration agreement to be construed broadly.  *See, e.g., P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999).  "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (internal quotation and citation omitted).  "[A] collateral issue . . . is somehow connected to the main agreement that contains the arbitration clause." *Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.*, 636 F.3d 562, 569 (10th Cir. 2010) (internal quotation and citation omitted).   "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* at 570 (quoting *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)). Where the arbitration clause is broad, however, an express provision excluding a specific dispute, or the "most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration in arbitration." *AT&T Techs.*, 475 U.S. at 650; *Cummings*, 404 F.3d at 1261 (quotation omitted).

---

[2] Defendant argues that this District has interpreted the "arising out of or relating to" language as covering "issues with any connection to the contract *or to the relationship between the parties*." (ECF No. 29 at 7 (emphasis added) (citing *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163 (D. Colo. 2001).)  The Court cautions Defendant that such an argument is misleading as the arbitration provision at issue in *GATX Management Services*, specifically provided for arbitration for "any and all claims, demands, causes of action, disputes, controversies, and other matters in question arising out of or relating to this [a]greement, any of its provisions, *or the relationship between the parties created by this [a]greement*." *GATX Mgmt. Servs.*, 171 F. Supp. 2d at 1163 (emphasis added). Because the arbitration provisions in this matter and *GATX Management Services* are not identical, Defendant's argument is not persuasive to the extent it seeks to compel arbitration as a result of the parties' relationship.

A00011

The Tenth Circuit has defined the concept of whether a dispute arises from a contract as follows: "a dispute must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect." *Riley Mfg. Co.*, 157 F.3d at 781 (quoting *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1024-25 (10th Cir. 1990)).

In this matter, the arbitration clause is broad to the extent *a claim* "aris[es] from or relat[es] to the [Settlement] Agreement." (ECF No. 29-4 at 10, Settlement Agreement ¶ 23.) Thus, the Court must analyze whether each of Plaintiff's claims arises from or relates to the Settlement Agreement.

### 2.   Claim One:  Declaratory Judgment (ECF No. 15 ¶¶ 37-41)

Plaintiff seeks a declaration from the Court that "[t]he conduct of Cequent *from* and after the termination of the License Agreement, in manufacturing, distributing and selling the LGA Inventions and in utilizing LGA Trademarks and LGA Copyrights is wrongful." (ECF No. 15 ¶ 38 (emphasis added).)  The parties terminated the License Agreement as part of their Settlement Agreement.  (ECF No. 29-4 at 3, Settlement Agreement ¶ 1.)  As such, Claim One relates to the termination of the License Agreement and it "arise[s] from or relate[s] to" the Settlement Agreement.  *See Riley Mfg. Co.*, 157 F.3d at 781.   Further, one can define the word "from" as "indicating a cause."  Oxford Am. Dictionary 697 (3d ed. 2010).  Thus, the termination of the License Agreement caused, in part, Defendant's conduct to be wrongful.  Again, such conduct arises from or relates to the Settlement Agreement.  Additionally, Plaintiff seeks a declaration from the Court that "the *continued processing* of the Applications by Cequent was wrongful and in violation of the rights of LGA."  (ECF No. 15 ¶ 41(c) (emphasis added).)  Plaintiff alleges that

A00012

"[o]n or about July 1, 2010, July 13, 2010, and December 15, 2010" certain individuals "filed or caused to be filed applications for international and domestic utility patents with the United States Patent and Trademark Office ('USPTO') and the World Intellectual Property Organization ('WIPO')."  (ECF No. 15 ¶ 20.)  Plaintiff also alleges that "[t]hese filings were for a bicycle rack in form and substance identical to the LGA Pixie/SportWing Invention, which had been disclosed to Cequent under the License Agreement."  (ECF No. 15 ¶ 20.)  The filings relate to conduct that occurred at least, in part, while the License Agreement was in effect, and thus, Claim One arises from or relates to the Settlement Agreement.

For these reasons, Claim One is arbitrable.

3.    Claim Two:  Unjust Enrichment and Accounting (ECF No. 15 ¶¶ 42-51)

Plaintiff alleges that "Cequent obtained and appreciated benefits *when it retained* the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media, mismarking them and then using them to market and sell LGA's products as its own following the January 28, 2012 termination of the License Agreement."  (ECF No. 15 ¶ 44 (emphasis added).)  Plaintiff alleges that "Cequent did not pay for the use of the LGA Inventions, LGA Copyrights, LGA Trademarks and Sales Media following the January 28, 2012 termination of the License Agreement."  (ECF No. 15 ¶ 45.)  Plaintiff alleges that "it would be inequitable and unjust for Cequent *to retain* the benefits LGA has conferred without payment to lGA."  (ECF No. 15 ¶ 46 (emphasis added).)  Plaintiff claims that "Cequent has been unjustly enriched by the manufacture, distribution and sale of LGA Inventions and materials from and after January 28, 2012, *all of which is derived from information disclosed by LGA to Cequent*."  (ECF No. 15 ¶ 47 (emphasis added).)

According to Plaintiff's Complaint, the information disclosed to Cequent occurred on and prior to January 28, 2012.  (ECF No. 15 ¶ 7.)  As such, at least part of the conduct of which

A00013

Plaintiff complains concerns actions which occurred while the License Agreement was in effect. Thus, such a complaint is subject to arbitration as the dispute arises from conduct, in part, occurring when the License Agreement was in effect. *See Riley Mfg. Co.*, 157 F.3d at 781. Such conduct is collateral to the Settlement Agreement.

    4.    <u>Claim Three:  Civil Conspiracy (ECF No. 15 ¶¶ 52-60)</u>

Plaintiff alleges that "Cequent agreed, combined and conspired with the Applicants to deprive LGA of its rights in the Inventions by *continuing to process the Applications* knowing of their invalidity from and after the termination of the License Agreement, and by selling the LGA Inventions from and after the termination of the License Agreement in violation of LGA's rights therein." (ECF No. 15 ¶ 53 (emphasis added).)    Further, Plaintiff alleges that "Cequent and the [a]pplicants conspired with and aided and abetted each other in continuing to process the Applications for a patent of the LGA Pixie/SportWing based upon the concealment of information which would show the Applications were false, because the bike rack was the direct product of the *knowledge Cequent had acquired from LGA* about the LGA Pixie/SportWing Invention *pursuant to the License Agreement*." (ECF No. 15 ¶ 21 (emphasis added).)

According to Plaintiff's Complaint, the information disclosed to Cequent occurred on and prior to January 28, 2012. (ECF No. 15 ¶ 7.)  Further, the applications were begun on July 1, 2010, July 13, 2010, and December 15, 2010 while the License Agreement was in effect. (ECF No. 15 ¶ 20.)  As such, at least part of the conduct of which Plaintiff complains concerns actions which occurred while the License Agreement was in effect.  Thus, such a complaint is subject to arbitration as the dispute arises from conduct, in part, occurring when the License Agreement was in effect. *See Riley Mfg. Co.*, 157 F.3d at 781.  Such conduct is collateral to the Settlement Agreement.

A00014

5.      <u>Claim Four:  Intentional Interference with Prospective Economic
Advantage (ECF No. 15 ¶¶ 61-68)</u>

Plaintiff alleges that "[s]ince January 28, 2012, the date at which the License Agreement

ceased to be effective, LGA had the valid and reasonable expectation that it would derive future

economic benefits from its sales and distribution of LGA Inventions and Sales Media and its use

of LGA Trademarks and LGA Copyrights."  (ECF No. 15 ¶ 63.)  Plaintiff further alleges that

"[f]rom and after the termination of the License Agreement, Cequent used untrue, deceptive or

misleading statements in their advertising and promotion, with the intent to purposely cause

LGA's current or potential customers not to enter into, perform or continue their prospective

business relations with LGA."  (ECF No. 15 ¶ 65.)

According to Plaintiff's Complaint, the conduct at issue concerns interference with

Plaintiff's business subsequent to the termination of the License Agreement.  The parties, in the

Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the

termination of the License Agreement.  (ECF No. 29-4 at 2, 5, 9, Settlement Agreement at 1, 8, ¶

6.)  Thus, this claim is not subject to arbitration.  *See AT&T Techs.*, 475 U.S. at 650; *see also*

*Cummings*, 404 F.3d at 1261.

6.      <u>Claim Five:  Direct Infringement of Patents (ECF No. 15 ¶¶ 69-76)</u>

Plaintiff alleges that "[s]ince the termination of the License Agreement on January 28,

2012 and to the present, Cequent has and continues to willfully and knowingly manufacture,

make, use, distribute, license, sell and offer for sale, and commercially exploit the LGA

Inventions that embody the patented invention without right and in violation of LGA's rights

therein, all of the foregoing being an unlawful infringement of LGA's rights in the LGA

Inventions relating thereto described in paragraph 9 [of the Complaint]."  (ECF No. 15 ¶ 70.)

Plaintiff alleges that it "owned the LGA Inventions through the period of Cequent's infringing acts and still owns the patents." (ECF No. 15 ¶ 71.)

According to Plaintiff's Complaint, the conduct at issue concerns patent infringement subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

> 7.    Claim Six:  Inducement to Infringe the Method Patents on the Silent Hitch Pin (ECF No. 15 ¶¶ 77-81)

Plaintiff alleges that Defendant "through the use of LGA's materials, instructed the users to infringe the patents." (ECF No. 15 ¶ 79.) Plaintiff alleges that Defendant "knew that the purchaser and user of the Silent Hitch Pin would by that use, infringe the subject patents." (ECF No. 15 ¶ 80.)

As Plaintiff's Claim Six is without a time limitation, it is unclear whether such conduct occurred prior to or after the effective date of the Settlement Agreement. Because the arbitration provision in the parties' Settlement Agreement is broad, there exists a presumption in favor of arbitrability. And thus, the Court finds that Claim Six is arbitrable because it potentially implicates issues of the parties' rights and obligations under the Settlement Agreement. *See Cummings*, 404 F.3d at 1261.

> 8.    Claim Seven:  Trademark Infringement (ECF No. 15 ¶¶ 82-89)

Plaintiff alleges that "Cequent has, since January 28, 2012 infringed on LGA's Trademarks by using and displaying them in commerce, without the permission of LGA in advertising and packaging for Cequent's Silent Hitch Pin and GearCage products sold or

supplied to others in violation of LGA's rights in the LGA Trademarks, all to the detriment and damage of LGA." (ECF No. 15 ¶ 85.)

According to Plaintiff's Complaint, the conduct at issue concerns trademark infringement subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) (Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

9.      Claim Eight:  False Advertising (ECF No. 15 ¶¶ 90-94)

Plaintiff alleges that "Cequent made false and misleading representations of fact in connection with the commercial advertising or promotion of its products in commerce from and after the termination of the License Agreement." (ECF No. 15 ¶ 91.)

According to Plaintiff's Complaint, the conduct at issue concerns false and misleading representations subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

10.      Claim Nine:  Copyright Infringement (ECF No. 15 ¶¶ 95-99)

Plaintiff alleges that "Cequent has, since January 28, 2012, willfully infringed on, misappropriated, and copied protectable elements of LGA's copyrights, images, and written manuals developed by LGA for its GearCage invention . . . with the intent to commercial exploit these works to which Cequent has no propriety rights." (ECF No. 15 ¶ 97.)  Further, Plaintiff

A00017

alleges "[f]rom and after the termination of the License Agreement, Cequent has published, distributed and used LGA's copyrighted materials, without the permission of LGA, in advertising and packaging for Cequent's products sold or supplied to others in violation of LGA's rights, all to the detriment and damage of LGA."  (ECF No. 15 ¶ 97.)

According to Plaintiff's Complaint, the conduct at issue concerns copyright infringement subsequent to the termination of the License Agreement.  The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement.  (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.)  Thus, this claim is not subject to arbitration.  *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

> 11.   Claim Ten:  False Copyright Management Information and Removal of Let's Go Aero's Copyright Management Information (ECF No. 15 ¶¶ 100-102)

Plaintiff alleges that Defendant has "intentionally altered or removed LGA's copyright management information on the user manuals and other materials associated with LGA's patented products."  (ECF No. 15 ¶ 100.)  Plaintiff further alleges that Defendant has "intentionally provided false Copyright Management Information in connection with LGA's copyrighted materials, including claiming for itself the copyright to the material, all with the intent to deceive and to conceal the infringement, or to enable or facilitate the infringement of LGA's rights."  (ECF No. 15 ¶ 101.)

As Plaintiff's Claim Ten is without a time limitation, it is unclear whether such conduct occurred prior to or after the effective date of the Settlement Agreement.  Because the arbitration provision in the parties' Settlement Agreement is broad, there exists a presumption in favor of arbitrability.  And thus, the Court finds that Claim Ten is arbitrable because it potentially

A00018

implicates issues of the parties' rights and obligations under the Settlement Agreement. *See Cummings*, 404 F.3d at 1261.

      12.    <u>Claim Eleven:  Unfair Competition (ECF No. 15 ¶¶ 103-108)</u>

Plaintiff alleges that Defendant "[f]rom and after the termination of the License Agreement, . . . copied LGA products and marketed them for sale as its own." (ECF No. 15 ¶ 104.) Further, Plaintiff alleges that Defendant's "conduct was and is likely to deceive the public and cause difficulties in distinguishing between LGA's and Cequent's products." (ECF No. 15 ¶ 105.)

According to Plaintiff's Complaint, the conduct at issue concerns unfair competition subsequent to the termination of the License Agreement. The parties, in the Settlement Agreement, excluded disputes concerning conduct which occurred subsequent to the termination of the License Agreement. (ECF No. 29-4 at 2, 5, Settlement Agreement at 1, 8, ¶ 6.) Thus, this claim is not subject to arbitration. *See AT&T Techs.*, 475 U.S. at 650; *see also Cummings*, 404 F.3d at 1261.

      13.    <u>Claim Twelve:  Reverse Passing Off (ECF No. 15 ¶¶ 109-113)</u>

Plaintiff alleges "[t]he LGA Inventions marketed, licensed and sold by Cequent from and after the termination of the License agreement originated with LGA.  Cequent acquired them pursuant to the License Agreement, but continued and continues to market and/or license the LGA Inventions for sale under its own name or under other re-sellers' names after the License terminated." (ECF No. 15 ¶ 110.) Further, Plaintiff alleges "Cequent's false designation of the origin of its products was likely to cause customer confusion." (ECF No. 15 ¶ 112.)

According to Plaintiff's Complaint, the information disclosed to Cequent occurred on and prior to January 28, 2012. (ECF No. 15 ¶ 7.) As such, at least part of the conduct of which

Plaintiff complains concerns actions which occurred while the License Agreement was in effect. Thus, such a complaint is subject to arbitration as the dispute arises from conduct, in part, occurring when the License Agreement was in effect.  *See Riley Mfg. Co.*, 157 F.3d at 781.  Such conduct is collateral to the Settlement Agreement.

14.   <u>Whether the Court Has Jurisdiction to Compel Arbitration</u>

Section 4 of the FAA provides the Court with jurisdiction to determine whether parties have agreed to arbitrate a dispute.  9 U.S.C. § 4.  The Tenth Circuit, however, has limited the Court's power by holding that "where the parties agree to arbitrate in a particular forum, only a district court in that forum has authority to compel arbitration under [Section] 4 of the FAA. *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).  In this case, the parties' Settlement Agreement provides that arbitration is to take place in Chicago, Illinois (ECF No. 29-4 at 10, Settlement Agreement ¶ 23) which is located within the United States District Court for the Northern District of Illinois.  The Tenth Circuit subsequently clarified that its holding in *Ansari* applies only to venue.  *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1054-55 (10th Cir. 2006).  Here, Plaintiff objects to Defendant's attempt to compel arbitration.  (ECF No. 38 at 13 n.4.)

Thus, the Court lacks jurisdiction to compel arbitration in Chicago, Illinois.  *1mage Software*, 459 F.3d at 1055.  The Court, however, takes judicial notice, that a related proceeding has been filed in the Northern District of Illinois, *Cequent Performance Products, Inc. v. Let's Go Aero, Inc.*, 1:14-CV-08457, which is currently stayed pending the Court's resolving Defendant's motion to compel.  (ECF No. 45 at 1; ECF No. 45-1.)  The Court will stay the matter as to Claims One, Two, Three, Six, Ten, and Twelve pending *de novo* resolution of the

Illinois Action.  *See Bushman Inv. Prop.s, Ltd. v. DBSI E-470 E. LLC*, Case No. 09-00674-MSK-

KLM, 2010 WL 582351, at *3 (D. Colo. Feb. 16, 2010).

15.   <u>Whether to Stay the Entire Litigation Pending Arbitration</u>

Where a court has found that a party's lawsuit contains some claims that raise arbitrable

issues and others that do not, the court has considerable discretion with respect to whether it

stays the claims that do not raise arbitrable issues or allows them to proceed.  *See Moses H.*

*Cone*, 460 U.S. at 20 n.23 (citations omitted).  The Tenth Circuit has stated that district courts are

to consider whether to institute a stay of all claims based upon "whether resolution of [the]

arbitrable claims will have a preclusive effect on the nonarbitrable claims that remain subject to

litigation and whether the arbitrable issues predominate over the remaining issues.  *Riley Mfg.*

*Co.*, 157 F.3d at 785.  "[T]he mere fact that piecemeal litigation results from the combination of

arbitrable and nonarbitrable issues is not reason enough to stay [the] entire case."  *Id*. at 785.

In this case, the parties have yet to brief the issue as to whether arbitration of Claims One,

Two, Three, Six, Ten, and Twelve will or will not have a preclusive effect on the remaining

claims not subject to arbitration.  Therefore, the Court reserves ruling on the request to stay the

matter in its entirety.  The Court orders the parties to file cross briefs within thirty (30) days of

this Order as to whether a stay is appropriate as to individual Claims Four, Five, Seven, Eight,

Nine, and Eleven.

**IV.   CONCLUSION**

Based on the foregoing, the Court:

(1)   GRANTS Defendant's motion to set aside the Clerk's entry of default (ECF No.

42), to wit, the Court ORDERS the Clerk of the Court to set aside the entry of default (ECF No.

41);

21

(2)    GRANTS Defendant seven (7) days leave to answer or otherwise respond to the Complaint (ECF No. 15);

(3)    GRANTS, in part, Defendant's motion to compel arbitration (ECF No. 29), to wit, the Court finds the following claims are subject to the parties' arbitration agreement (ECF No. 29-4):

    (i)    Claim One (ECF No. 15 ¶¶ 37-41);

    (ii)    Claim Two (ECF No. 15 ¶¶ 42-51);

    (iii)    Claim Three (ECF No. 15 ¶¶ 52-60);

    (iv)    Claim Six (ECF No. 15 ¶¶ 77-81);

    (v)    Claim Ten (ECF No. 15 ¶¶ 100-102); and

    (vi)    Claim Twelve (ECF No. 15 ¶¶ 109-113)

(4)    DENIES, in part, Defendant's motion to compel arbitration (ECF No. 29), to wit, the Court lacks jurisdiction in which to compel the parties to arbitrate Claims One, Two, Three, Six, Ten, and Twelve in Plaintiff's Second Amended Complaint (ECF No. 15); and

(5)    GRANTS, in part, Defendant's request to stay proceedings (ECF No. 29), to wit the matter will be stayed as to:

    (i)    Claim One (ECF No. 15 ¶¶ 37-41);

    (ii)    Claim Two (ECF No. 15 ¶¶ 42-51);

    (iii)    Claim Three (ECF No. 15 ¶¶ 52-60);

    (iv)    Claim Six (ECF No. 15 ¶¶ 77-81);

    (v)    Claim Ten (ECF No. 15 ¶¶ 100-102); and

    (vi)    Claim Twelve (ECF No. 15 ¶¶ 109-113) pending resolution of the Illinois Action; and

A00022

(6)     RESERVES ruling, in part, Defendant's request to stay proceedings (ECF No.

29), to wit the Court ORDERS the parties to file cross briefs within thirty (30) days of this Order

as to whether a stay is appropriate to the following individual claims:

    (i)     Claim Four (ECF No. 15 ¶¶ 61-68);

    (ii)    Claim Five (ECF No. 15 ¶¶ 69-76);

    (iii)   Claim Seven (ECF No. 15 ¶¶ 82-89);

    (iv)    Claim Eight (ECF No. 15 ¶¶ 90-94);

    (v)     Claim Nine (ECF No. 15 ¶¶ 95-99); and

    (vi)    Claim Eleven (ECF No. 15 ¶¶ 103-108).

DATED this 28th day of January, 2015.

                            BY THE COURT:


                            _____
                            RAYMOND P. MOORE
                            United States District Judge